FILED & ENTERED

MAR 27 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae          DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:11-bk-19111-RK |
| **MARK W. LEBENS**, | Chapter 11 |
| Debtor. | **SEPARATE STATEMENT OF DECISION ON DEBTOR'S OBJECTIONS TO FINAL FEE APPLICATIONS OF PROFESSIONALS OF THE ESTATE** |

## PROCEDURAL HISTORY

The contested matters of the second and final fee applications of the Law Offices of Steven R. Fox ("LOSRF"), counsel for debtor-in possession, and Howard Fox, C.P.A. ("CPA"), accountant for debtor-in-possession, were tried before the undersigned United States Bankruptcy Judge on September 27 and October 25, 2012. Steven R. Fox ("Attorney Fox") represented himself and Howard Fox. Howard Fox also appeared on his own behalf. Mark Lebens, debtor, represented himself.

The court has heard and considered the testimony of the witnesses who testified at trial and the oral arguments of the parties made at trial, and the court has read and considered the documents received as exhibits at trial as well as the written arguments made by the parties and the other papers and pleadings filed in the case. The court has also reviewed and considered the proposed findings of fact and conclusions of law

1  submitted by the parties after trial on November 9, 2012 and December 11, 2012 as well

2  as the objections made thereto on December 20, 2012.

3       On May 22, 2012, LOSRF and CPA filed the second and final fee applications and

4  noticed the fee applications for hearing on June 12, 2012.  LOSRF seeks approval of an

5  award totaling $55,692.21 for professional fees and costs ($51,257.98 in fees and

6  $4,434.23 in costs) for the period from December 24, 2011 through May 16, 2011.

7  LOSRF also seeks approval on a final basis professional fees and costs totaling

8  $158,327.24 ($148,025.25 in fees and $10,301.99 in costs) previously approved on an

9  interim basis by orders entered on March 7 and 19, 2012.

10       CPA seeks approval of an award of $5,500.00 for professional fees for the period

11  from January 1, 2012 through May 16, 2011.  CPA also seeks approval on a final basis

12  professional fees of $21,062.50 previously approved on an interim basis by an order

13  entered on March 7, 2012.

14       On May 30, 2012, Attorney Fox filed a declaration stating that he and debtor had

15  met and discussed the fee applications, that there were disagreements over the fees for

16  the fee applications and that debtor declined to support the fee applications.  On May 30,

17  2012, debtor filed two declarations in dispute of the fee applications stating that fee

18  applications are so high that they jeopardize the approved plan and said that he "is

19  seeking fair and equitable treatment from the Court and the U.S. Trustee in the

20  successful conclusion of Court awarded fees."

21       At the hearing on June 12, 2012, in light of debtor's objections to the fee

22  applications, the court stated it considered the objections to the fee applications to be

23  contested matters and ordered that the matters be set for an evidentiary hearing.

24       The court conducted the evidentiary hearing on September 27 and October 25,

25  2012.  At the evidentiary hearing, debtor orally stated his grounds for objection through

26  oral argument and testimony.  The court ordered the parties to submit proposed findings

27  of fact and conclusions of law after the evidentiary hearing and allowed the parties to

28

1  interpose objections to the same.  The court set a further hearing for February 5, 2013,

2  which has been continued to March 5, 2013 and April 9, 2013.

3      In his proposed findings of fact and conclusions of law, debtor further stated his

4  grounds for objection to the fee applications.  The court has separately adopted findings

5  of fact and conclusions of law which have been reviewed, modified and filed concurrently

6  herewith.

7  **ANALYSIS**

8      The court evaluates the fee applications under 11 U.S.C. § 330(a)(1), which

9  authorizes the court to award to a professionals employed under 11 U.S.C. §327(a)

10  "reasonable compensation for actual, necessary services" rendered by the professionals

11  and "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(A) and (B);

12  *see also, Ferrette & Slater v. United States Trustee (In re Garcia),* 335 B.R. 717, 723-724

13  (9th Cir. BAP 2005).  "[A] professional need demonstrate only that the services were

14  reasonably likely to benefit the estate at the time rendered."  *In re Garcia,* 335 B.R. at

15  724, *citing Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet),*

16  251 B.R. 103, 106 (9th Cir. BAP 2000).  This authority includes the discretion, upon

17  motion or *sua sponte,* to "award compensation that is less than the amount" requested.

18  *Id.* §330(a)(2) (emphasis added); see *Law Offices of David A. Boone v. Derham-Burk (In*

19  *re Eliapo)*, 468 F.3d 592, 597 (9th Cir. 2006).

20      Section 330(a)(3) directs the court to assess "the nature, the extent, and the value"

21  of the professional services provided when determining the amount of reasonable

22  compensation to award, taking into consideration "all relevant factors," including:

23      (A) the time spent on such services;

24      (B) the rates charged for such services;

25      (C) whether the services were necessary to the administration of, or beneficial at

26      the time at which the service was rendered toward the completion of, a case under

27      this title;

28      (D) whether the services were performed within a reasonable amount of time

commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [title 11].

11 U.S.C. §330(a)(3)(A)-(E); *see also, In re Garcia,* 335 B.R. at 723-724.

However, Section 330(a)(4)(A) also provides:

. . . the court shall not allow compensation for-

      (i)    unnecessary duplication of services; or

      (ii)   services that were not-

           (I)    reasonably likely to benefit the debtor's estate; or

           (II)   necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A); *see also, In re Garcia,* 339 B.R. at 724.

As the Bankruptcy Appellate Panel of the Ninth Circuit stated in *Garcia* and *Mednet,* "in addition, a bankruptcy court examines the circumstances and manner in which services are performed and results achieved to determine a reasonable fee. *In re Garcia,* 335 B.R. at 724, *citing In re Mednet,* 251 B.R. at 106. According to the BAP, such examination includes:

(a) Were the services authorized?

(b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?

(c) Are the services adequately documented?

(d) Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)?

(e) In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

*Id.; see also, Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.,* 924 F.2d 955, 957-959 (9th Cir. 1991).

As to exercising reasonable billing judgment, the BAP stated in *Garcia,* the professional must consider:

    (a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

    (b) To what extent will the estate suffer if the services are not rendered?

    (c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*In re Garcia,* 335 B.R. at 724, *citing In re Mednet,* 251 B.R. at 108 n. 7, *citing to, Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.,* 924 F.2d 955, 959 (9th Cir. 1991).

Based on the foregoing, the court separately reviews the fee applications of the professionals, first, LOSRF, and then, the CPA.

**1.    Fee Application of Law Offices of Steven R. Fox**

First, the court examines whether the services of the professional, LOSRF, were authorized. The answer is yes as the court approved by order entered on May 6, 2011 LOSRF's application for employment as general bankruptcy counsel for debtor-in-possession pursuant to Section 327 of the Bankruptcy Code, 11 U.S.C.

Debtor objects to the fee application of LOSRF as lacking authorization because the firm collected fees without signing a written fee retainer agreement in advance in violation of California Business and Professions Code, § 6148. The court finds that this objection lacks merit because the parties signed a written fee retainer agreement dated February 28, 2011 regarding the provision of professional services by LOSRF, which covered the services rendered on or after March 3, 2011, which are the subject of the final fee application. Debtor also asserts that he was "under duress" when he signed the fee retainer agreement, but the circumstances of the parties' agreement for LOSRF to handle his bankruptcy case as evidenced by the record do not indicate duress or compulsion. Debtor sought LOSRF's professional services based on the recommendation of an acquaintance, and after the initial consultation, he voluntarily

1  agreed to retain LOSRF to handle his bankruptcy case.

2      Debtor cites no authority that the fees are not payable for professional services

3  rendered because of a technical violation of Business & Professions Code Section 6148

4  if the fees are collected before a formal fee retainer agreement is signed.  As indicated in

5  the final fee application, LOSRF collected $45,000 as a retainer prepetition, including

6  payment of the Chapter 11 filing fee for the bankruptcy case, and it is not disputed that

7  this retainer was paid by debtor and collected by LOSRF before the formal retainer

8  agreement was signed on February 28, 2011.   Second and Final Fee Application of

9  LOSRF at 11.  According to LOSRF in the second and final fee application, $25,295 was

10  the remaining retainer amount at the commencement of the bankruptcy case after

11  application of the retainer for fees billed prepetition and the Chapter 11 filing fee.  *Id.*

12  Even so, the court notes that the fees claimed in the fee application were for services

13  were rendered after the fee retainer agreement was signed or about February 28, 2011

14  as indicated by the billing entries for services rendered between March 3, 2011 and

15  December 23, 2011 and that LOSRF would otherwise have a proper claim for fees for

16  professional services rendered based on *quantum meruit* principles.  *See* California

17  Business & Professions Code, § 6148(c).

18      Second, the court next inquires whether the services necessary or beneficial to the

19  administration of the estate at the time they were rendered.  As discussed herein, the

20  court finds that the services of LOSRF were necessary and/or beneficial to the

21  administration of the estate at the time they were rendered.  The services resulted in the

22  confirmation of the plan of reorganization of the debtor-in-possession, which incorporated

23  the stripdown of existing liens on debtor's numerous investment properties to market

24  values over the objections of creditors.

25      Third, the court examines whether the services adequately documented.  The

26  court has reviewed the entries on the billing statements attached to the Fox Declaration,

27  which describe the services rendered by LOSRF, as well as the fee applications

28  themselves.  The court finds that LOSRF's services are adequately documented as

1  shown by the detailed billing statements attached to its fee applications, which

2  satisfactorily explain the services rendered.

3      Fourth, the court considers whether the fees required reasonable, taking into

4  consideration the factors set forth in section 330(a)(3).  As discussed above, the court

5  considers the specific factors of Section 330(a)(3)(A)-(E): (A) the time spent on such

6  services; (B) the rates charged for such services; (C) whether the services were

7  necessary to the administration of, or beneficial at the time at which the service was

8  rendered toward the completion of, a case under this title; (D) whether the services were

9  performed within a reasonable amount of time commensurate with the complexity,

10  importance, and nature of the problem, issue, or task addressed; and (E) whether the

11  compensation is reasonable based on the customary compensation charged by

12  comparably skilled practitioners in cases other than cases under [title 11].  *In re Garcia,*

13  335 B.R. at 724.

14      As recently noted by the Supreme Court in *Purdue v. Kenny A.,* 559 U.S. 542, 130

15  S.Ct. 1662 (2010), "[A] reasonable attorney's fee is one is adequate to attract competent

16  counsel, but that does not produce windfalls to attorneys."  130 S.Ct. at 1672, *citing Blum*

17  *v. Stetson,* 465 U.S. 886, 897 (1984).   In the Ninth Circuit, the customary method used to

18  determine a reasonable fee in bankruptcy cases is to calculate the lodestar.  *In re Eliapo,*

19  468 F.3d at 598; *Yermakov v. Fitzsimmons (In re Yermakov),* 718 F.2d 1465, 1471 (9th

20  Cir. 1983); *In re Parreira,* 464 B.R. 410, 416 (Bankr. E.D. Cal. 2012).  A court computes

21  the lodestar by multiplying the number of hours reasonably expended by a reasonable

22  hourly rate.  *In re Yermakov,* 718 F.2d at 1471; *see also, Hensley v. Eckerhart,* 461 U.S.

23  424, 433 (1983) (reasoning that the lodestar "calculation provides an objective basis on

24  which to make an initial estimate of the value of a lawyer's services").

25      Once the lodestar is established, there is a strong presumption that the lodestar

26  figure represents a reasonable fee.  *In re Parreira,* 464 B.R. at 416, *citing In re Manoa*

27  *Fin. Corp.,* 853 F.3d 687, 691 (9th Cir. 1988).  However, a court is permitted to adjust the

28  lodestar up or down using a "multiplier" based on the criteria listed in § 330 and its

1   considerations of the *Kerr*[1] factors not subsumed within the initial calculation of the

2   lodestar.  *See, e.g., Blum v. Stenson*, 465 U.S. at 898-901(reversing an upward multiplier

3   based on factors subsumed in the lodestar determination); *Dang v. Cross*, 422 F.3d 800,

4   812 (9th Cir. 2005) (observing that a court, in its discretion, may "adjust the lodestar

5   amount after considering other factors that bear on the reasonableness of the fee"); *In re*

6   *Parriera,* 464 B.R. at 417.  As noted earlier, Section 330(a)(3) lists specific factors for the

7   court to consider in determining reasonableness of fees, including time spent, rates

8   charged,  necessity and benefit of the services, reasonableness of the time spent

9   compared with task complexity, importance, and nature, and customary rates of

10   comparably skilled practitioners in nonbankruptcy cases.  *In re Garcia,* 335 B.R. at 724.

11   Section 330(a)(4)(A) also prohibits the bankruptcy court from allowing compensation for

12   unnecessary duplication of services, and services that were not either reasonably likely to

13   benefit the debtor's estate nor necessary to its proper administration.  11 U.S.C.

14   §330(a)(4)(A).  Likewise, hours not reasonably expended because they are "excessive,

15   redundant, or otherwise unnecessary" must be excluded from the lodestar amount.

16   *Hensley v. Eckerhart*, 461 U.S. at 434; *Dawson v. Washington Mutual Bank, F.A. (In re*

17   *Dawson),* 390 F.3d 1139, 1152 (9th Cir. 2004) (citation omitted).

18        The court should first determine whether the hourly rates claimed by LOSRF are

19   reasonable.  The blended hourly rate for the attorneys and legal staff of LOSRF is

20   $288.86.  This is calculated by dividing the total fee request of $199,282.83 (fees claimed

21   on first fee application of $148,025.25 based on 528.65 hours worked, plus fees claimed

22

---

[1] The original twelve *Kerr* factors were:

   (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975).

1  on second fee application of $51,257.58 based on 161.25 hours worked) by the number

2  of stated hours worked – 689.9 (528.65 hours from first fee application, plus 161.25 hours

3  from second fee application).  *Trial Declaration of Steven R. Fox* and *Trial Exhibit 51,*

4  *Second Fee Application.*  The range of hourly rates is from $120 for paralegal time to

5  $400 for the principal of the law firm.  *Id.*  The hourly rates and the blended hourly rate

6  are generally reasonable in light of the work involved, but as discussed below, the court

7  finds that some consideration should be given to the varying levels of experience of the

8  professionals at LOSRF who rendered services in this case.

9       Next, the court must address whether the number of hours expended is

10  reasonable.  After a careful review of the billing records submitted by LOSRF, the court

11  finds that the number of hours billed in this case be generally reasonable, except for

12  some instances which were excessive, redundant or unnecessary under the

13  circumstances as discussed herein.   Generally, a bankruptcy court has broad discretion

14  to determine the number of hours reasonably expended.  "[E]ven where evidence

15  supports [that] a particular number of hours [were] worked, the court may give credit for

16  fewer hours if the time claimed is 'excessive, redundant, or otherwise unnecessary."  *In*

17  *re Dawson,* 390 F.3d at 1152 (citation omitted).   "The Court will determine what is the

18  reasonable amount of time an attorney should have to spend on a given project."  *In re*

19  *Pettibone Corp.,* 74 B.R. 293, 306 (Bankr. N.D. Ill. 1987), *citing, In re Shades of Beauty,*

20  *Inc.,* 56 B.R. 946, 951 (Bankr. E.D.N.Y. 1986).  "Without such a determination, for

21  example, a slow attorney could earn more than the skillful, efficient practitioner solely due

22  to the additional time he or she needs to obtain the same result."  *Id.*  "An attorney should

23  not be rewarded for inefficiency."  *Id.*

24       After considering the evidence at trial, the court finds that the tasks performed by

25  LOSRF as attorneys for debtor-in-possession to be relatively difficult and complex.  The

26  tasks required in this representation were to file and prosecute a voluntary case under

27  Chapter 11 of the Bankruptcy Code, the business bankruptcy chapter of the Bankruptcy

28  Code, for an individual debtor who owned numerous parcels of investment real property

1    and to confirm a plan of reorganization which contemplated the stripping down of existing

2    liens on the properties to current market values for which opposition from the affected lien

3    creditors was likely because the plan of reorganization would partially or totally strip liens

4    of some secured creditors and reduce interest rates on remaining secured indebtedness

5    while having to meet the plan confirmation standards of the Bankruptcy Code under 11

6    U.S.C. § 1129.  Successfully confirming a plan of reorganization in this case required lien

7    valuation and avoidance litigation against secured creditors on most of debtor's

8    numerous properties, including his principal residence and investment properties, and

9    was only made possible through extensive and protracted negotiations over property

10   valuation and interest rates with the secured creditors holding liens on the properties.

11       One of the debtor's objections to LOSRF's fee application is that the number of

12   hours expended was not reasonable.  The court has considered and now addresses this

13   and other objections of the debtor to the fee applications.

14       Debtor contends that he and the professionals agreed to a "soft cap" of $80,000

15   for all professional fees to handle his bankruptcy case.  Having heard the testimony of the

16   witnesses at trial and considered the written evidence, the court finds that there was no

17   agreement to a fee cap.  The parties had signed written fee agreements which provided

18   for payment for professional services based on hourly fee rates and did not expressly

19   provide for any ceiling on professional fees.  While debtor may have expected that the

20   budget for professional fees to handle this case would not exceed $80,000, the

21   professionals did not so agree, and the professionals did not commit to a fee cap.  A cap

22   on their fees after the fact would be unfair to them because they relied upon the express

23   terms of the written fee agreements that they would be compensated based on their time.

24   In this regard, the court finds that the testimony of Attorney Fox to be credible that there

25   was no agreement to cap professional fees, and his testimony is corroborated by the

26   express terms of the written fee agreement between LOSRF and debtor signed by the

27   parties.

28       Debtor contends that the hours spent by LOSRF were unreasonable.  Specifically,

debtor contends that the time billed by Attorney Park, LOSRF's associate attorney, for negotiating with debtor's mortgage lenders was unreasonable.  Debtor argues that the time spent by Attorney Park is excessive.  While the court does not entirely agree with Debtor's objections, the court finds that to some extent, debtor's objections have merit. The court notes that Attorney Park at the time the services were rendered was a new attorney in his first months of law practice.  The time period in which the services were rendered by Attorney Park were within the first year or so of the date he first became a lawyer upon his admission to the State Bar of California in December 2010.  The court has reviewed Attorney Park's hours billed as reflected on the billing entries for his services, and the court has the distinct impression that the tasks took him longer not just as someone new to bankruptcy practice, but to law practice in general than a seasoned bankruptcy lawyer like Attorney Fox, who has been practicing bankruptcy law since 1988. While Attorney Park will probably be a skillful, efficient attorney in the future, his lack of experience showed in the time records reflecting his time spent on the case, in this court's opinion, as discussed below.  This case must have been the first, or one of the first, Chapter 11 business bankruptcy cases that Attorney Park has worked on since the time records show his working on the case when it was filed on March 4, 2011, within four months of his admission to the bar.

Although this undersigned United States Bankruptcy Judge took over the case in February 2012 after the original assigned judge, the Honorable Ellen Carroll, retired, this court is thoroughly familiar with the proceedings in this case, having presided over and ruled upon the confirmation of debtor's plan of reorganization and consideration of the first fee applications of LOSRF and CPA, having reviewed most of the pleadings and papers filed in this case, which are part of the evidentiary record as they were submitted as trial exhibits by applicants, LOSRF and CPA, and having heard the testimony of the witnesses at trial, including Attorneys Fox and Park, Accountant Fox and debtor.  "The Bankruptcy Judge should be familiar with fees charged in the legal profession, and experienced at evaluating the quality of legal work and the difficulty and complexity of

1  legal issues as well as the appropriate amount of time billed for various legal tasks." *In re*

2  *Pettibone Corp.,* 74 B.R. at 306, *citing, In re Liberal Market, Inc.,* 24 B.R. 653, 657

3  (Bankr. S.D. Ohio 1982).   "The Court may consider its own knowledge and experience

4  concerning reasonable and proper fees and may form an independent judgment as to

5  value." *Id., citing, In re WHET, Inc.,* 61 B.R. 709, 713 (Bankr. D. Mass. 1986).  Having

6  considered this evidentiary record, the court finds that some of the time billed is

7  excessive or unnecessary because it took longer for Attorney Park to complete the

8  services than an experienced attorney, who is expected to be both skillful and efficient.

9  *Id., citing, In re Shades of Beauty, Inc.,* 56 B.R. at 951.

10      The issue of billing judgment regarding work of less experienced associate

11  attorneys has been described by Professor Nancy Rapoport in her law review article,

12  "Rethinking Professional Fees in Chapter 11 Cases," *5 Journal of Business & Technology*

13  *Law 263, 277 and n. 63 (2010).*  Professor Rapoport explains:

14      In much of the non-bankruptcy world, a client might review a bill with a
       first-year (or mid-level) associate checking a docket weekly for entries and
15      have, as we say down in East Texas, a hissy fit; why would someone
       billing $300/hour need to check the docket when a paralegal can do it for
16      half the cost?  That client would pick up the phone, call up the billing
       partner, and ask for a discount on that month's bill.
17

18  *Id.*  While it is true as Abraham Lincoln once said, "A lawyer's time and advice are his

19  stock in trade" (*see* http://thinkexist.com/quotation/a_lawyer_s_time_and_

20  advice_are_his_stock_in/162359.html) and generally speaking, when time is required to

21  perform the legal services needed for the client, a new attorney is generally not as

22  efficient as an experienced practitioner.  *Id.* at 278.   Professor Rapoport comments on

23  the logic of a client working with a more experienced law partner and a less experienced

24  associate attorney:

25      [A client] may be inclined to think that the [law firm] partners, who can draft
       more quickly, will be more efficient at drafting that [legal] memo.  Maybe
26      that's true; sometimes, it's certainly true.  For most memos, though,
       pushing the drafting work down to lower-billing associates (and then
27      writing down the excess time spent on the draft) will save the client
       money.  That last point—writing down the excess time so that the client
28

1    doesn't have to foot the bill for waste—is something that doesn't happen
2    as often as it used to.

3    *Id.*

4    LOSRF wrote down very little time with respect to Attorney Park and his lack of

5    experience. *Id.* at 278 n. 65 ("'Writing down' means to determine that the client will not

6    have to pay for certain billable work because the billing partner has zeroed out that part

7    of the bill.  This zeroing out of wasteful billing is considered 'billing judgment,' and it's in

8    shorter supply than it used to be.")  While Attorney Park was supervised by an

9    experienced attorney, Attorney Fox, Attorney Park performed the bulk of the services

10   rendered in this case.   The little time that LOSRF wrote down for the case was for

11   meetings involving multiple attorneys since the retainer agreement provided that only one

12   professional would be billed if more than one attended a meeting (i.e., Attorney Fox and

13   Attorney Park conferring among themselves or both attending meetings with third parties

14   and for an attorney performing paralegal or secretarial functions (i.e., Attorney Park

15   helping out in physically serving pleadings).  LOSRF did, however, write off a small

16   amount of time for Attorney Park's services, noting not all of hours devoted to a task were

17   billed, but in this court's view, such writeoffs were too few and insufficient as discussed

18   herein.

19   However, reviewing the time entries and the work product of Attorney Park

20   demonstrates to the court that Attorney Park took excessive time in completing and billing

21   for routine tasks in drafting and redrafting the plan disclosure statement and preparing

22   charts for the disclosure statements, really a paralegal or secretarial task, which warrants

23   partial disallowance of fees as excessive.  LOSRF billed debtor 299.60 hours for

24   preparing the disclosure statement, of which 16.70 hours (representing $4,445) was not

25   charged, leaving a net amount claimed as due of $89,920.[2]

26

27   _____
     [2]   The court also notes a category called "Litigation" billed for 8.50 hours with an amount claimed due of
28   $2,125 with the explanation, ""No litigation was handled in this case.  This category became a catch all

1    LOSRF claims 0.5 hour by Attorney Park for researching procedures for recording

2 bankruptcy petitions with Los Angeles and Kern County Recorders (0.5 hour on 3/18/11).

3 The court finds that the claimed time is excessive because knowledge of such

4 procedures is basic and should not be charged for by a brand new attorney who is

5 unfamiliar with this basic knowledge.  The court will allow no fees for this billed time as

6 reasonable (resulting in a reduction of $125.00 in fees).

7    LOSRF claims 3.5 hours by Attorney Park for researching service addresses for

8 creditors (1.5 hours on 3/17/11 and 2.0 hours on 3/18/11).  The court finds that the

9 claimed time is excessive because a higher cost attorney is conducting this nonlegal

10 research task rather than a lower cost experienced paralegal or legal assistant  The court

11 will allow 1.0 hour of administrative time at a legal assistant rate of $125 per hour as

12 reasonable (resulting in a reduction of $750.00 in fees).

13    LOSRF claims 1.0 hour by Attorney Park for researching service addresses for

14 contested proceeding (1.0 hour on 3/21/11).  The court finds that the claimed time is

15 excessive because a higher cost attorney is conducting this nonlegal research task rather

16 than a lower cost paralegal or legal assistant. The court will allow 1.0 hour of

17 administrative time at a legal assistant rate of $125 per hour as reasonable (resulting in a

18 reduction of $125.00 in fees).

19    LOSRF claims 0.5 hour by Attorney Park for preparing a notice of change of date

20 and time for the meeting of creditors (0.5 hour on 3/23/11).  The court finds that the

21 claimed time is excessive because a higher cost attorney is conducting this nonlegal

22 word processing task rather than a lower cost paralegal or legal assistant.  The court will

23 allow 0.5 hour of administrative time at a legal assistant rate of $125 per hour as

24 reasonable (resulting in a reduction of $62.50 in fees).

25    LOSRF claims 84.9 hours by Attorney Park for researching lienstripping and

26 ─────────────────
category."  Second and Final Fee Application of LOSRF at 8.  This category is perhaps notable because it
denotes that this was ultimately an uncontested Chapter 11 case.

27

28

1  drafting motions to avoid liens on debtor's principal residence and investment properties

2  (2.5 hours on 3/15/11, 0.6 hour on 3/16/11, 1.9 hours on 3/17/11, 2.0 hours on 3/23/11,

3  2.8 hours on 3/24/11, 1.0 hour on 3/30/11, 1.0 hour on 3/31/11, 1.0 hour on 4/8/11, 1.2

4  hours on 4/12/11, 1.2 hours on 4/14/11, 1.0 hour on 4/15/11, 1.5 hours on 4/18/11, 0.9

5  hour on 4/20/11, 3.2 hours on 4/21/11, 2.0 hours on 4/22/11 (3.5 hours devoted), 2.5

6  hours on 4/25/11 (6.5 hours devoted), 4.5 hours on 5/3/11, 1.5 hours on 5/6/11, 1.5 hours

7  on 5/10/11, 5.5 hours on 5/11/11, 8.5 hours on 5/12/11, 8.0 hours on 5/13/11, 3.5 hours

8  on 5/16/11, 2.0 hours on 5/17/11, 1.0 hour on 5/18/11, 1.0 hour on 5/19/11, 1.5 hours on

9  5/20/11, 2.5 hours on 5/27/11, 10.2 hours on 5/27/11, 1.5 hours on 5/31/11, 0.1 hour on

10  5/31/11, 2.0 hours on 5/31/11, 0.8 hour on 6/8/11).  The court finds that the claimed time

11  is excessive because based on the court's review of the lien avoidance motions, the

12  tasks to draft the motions based on minimal legal citations and presenting simple

13  valuation issues did not warrant the time claimed.  Although the number of motions is

14  relatively large, the motions were simple, repetitive, and generally uncontested.  The

15  court will allow 35.0 hours of attorney time as reasonable (resulting in a reduction of

16  $12,475 in fees).

17       LOSRF claims 4.3 hours by Attorney Park for drafting the status report filed on

18  4/14/11 (1.0 hours on 4/13/11, 3.3 hours on 4/14/11) and 1.2 hours by Attorney Fox (1.0

19  hour on 4/12/11 and 0.2 hour on 4/13/11).  The court finds that the claimed time is

20  excessive because based on the court's review of the status report, the task to prepare

21  the status report did not warrant the time claimed.  The court will allow 2.0 hours of

22  attorney time by Attorney Park and 1.2 hours by Attorney Fox as reasonable (resulting in

23  a reduction of $575.00 in fees).

24       LOSRF claims 7.5 hours by Attorney Park for drafting the application for extension

25  of deadline to submit proposed plan and disclosure statement and proposed order

26  thereon (1.0 hour on 6/22/11, 0.8 hour on 6/23/11, 2.0 hours on 6/24/11, 1.5 hour on

27  6/27/11, 0.5 hour on 6/27/11, 0.9 hour on 7/12/11, 0.8 hour on 7/13/11).  The court finds

28  that the claimed time is excessive because this was a routine, straightforward application

1   and order which should be based on standardized form pleadings that did not warrant the

2   time claimed and for performing nonlegal administrative tasks of service of application.

3   The court will allow 2.0 hours of attorney time as reasonable (resulting in a reduction of

4   $1,375.00 in fees).

5        LOSRF claims 1.1 hours by Attorney Park for legal research on 11 U.S.C. § 1129

6   (0.7 hour on 6/7/11, 0.4 hour on 6/16/11,) and 2.1 hours by Attorney Fox (2.1 hours on

7   8/5/11).  The court finds that the claimed time is excessive because there is no

8   explanation of why the plan confirmation statute was needed to be researched since

9   business bankruptcy counsel should be generally familiar with the requirements of that

10  statute.   The court will allow 1.0 hour of attorney time by Attorney Fox for this research

11  as reasonable (resulting in a reduction of $715.00 in fees).

12       LOSRF claims 5.5 hours by Attorney Park for legal research on classification of

13  claims (1.0 hour on 6/10/11, 1.0 hour on 6/13/11, 1.5 hours on 6/14/11, 0.5 hour on

14  6/28/11) and on claim classification and interest rates (1.5 hours on 6/27/11 and 1.0 hour

15  on 6/28/11).  The court finds that the claimed time is excessive because there is no

16  explanation in the fee applications of why these subjects were researched and what legal

17  issues were presented.  The primary issue in this case related to treatment of the

18  secured claims relating to debtor's real estate investments.  The court will allow 1.0 hour

19  of attorney time for this research as reasonable (resulting in a reduction of $1,125.00 in

20  fees).

21       LOSRF claims 6.7 hours by Attorney Park for legal research on the Antelope

22  Valley economic conditions and its real estate market (1.5 hours on 5/14/11, 1.5 hours on

23  6/14/11, 0.8 hour on 6/15/11, 1.5 hours on 6/22/11, 0.9 hour on 6/23/11, 0.5  hour on

24  6/28/11) The court finds that the claimed time is excessive because a higher cost

25  attorney is conducting this nonlegal research rather than a lower cost paralegal or other

26  real estate professional.  Moreover, applicant could have asked debtor for assistance

27  since he is an experienced real estate investor.  The court will allow 1.0 hour of research

28  time as reasonable (resulting in a reduction of $1,425.00 in fees).

LOSRF claims 7.3 hours by Attorney Park for preparing charts of notes, interest rates, loan terms and real properties (2.1 hours on 7/1/11, 1.8 hours on 8/18/11, 0.4 hour on 8/26/11, 2.0 hours on 8/29/11 and 0.2 hour on 8/30/11, 0.1 hour on 8/31/11, 0.7 hour on 12/21/11)  The court finds that the claimed time is excessive because a higher cost attorney is conducting this nonlegal word processing tasks rather than a lower cost paralegal or legal assistant.  The court will allow 1.5 hours of attorney time for supervision and review of preparation of charts and 3.0 hours of administrative time at a legal assistant rate of $125 per hour for preparing charts as reasonable (resulting in a reduction of $1,075.00 in fees).

LOSRF claims 32.7 hours by Attorney Park for drafting the initial disclosure statement (2.0 hours on 6/16/11, 2.5 hours on 6/17/11, 2.5 hours on 7/11/11, 1.0 hour on 7/12/11, 1.0 hour on 7/13/12, 1.0 hour on 7/14/12, 6.8 hours on 7/14/11, 3.8 hours on 7/15/11, 1.5 hours on 7/16/11, 2.5 hours on 7/17/11, 4.0 hours on 7/18/11, 0.5 hour on 7/19/11, 0.3 hour on 7/27/11, 0.5 hour on 8/12/11, 0.8 hour on 8/15/11).  The court finds that the claimed time is excessive because the task to draft the initial disclosure statement which should be based on a standardized form pleading did not warrant the time claimed and attorney time is billed for nonlegal administrative tasks such as preparing notice for service and filing.  The court will allow 20.0 hours of attorney time as reasonable (resulting in a reduction of $3,175.00 in fees).

LOSRF claims 21.1 hours by Attorney Park for drafting the first amended disclosure statement (2.0 hours on 9/6/11, 3.2 hours on 9/7/11, 0.5 hour on 9/8/11, 5.2 hours on 9/8/11, 6.9 hours on 9/9/11, 3.5 hours on 9/12/11, 0.8 hours on 9/12/11).  The court finds that the claimed time is excessive because the task to amend a prior version of the disclosure statement did not warrant the time claimed.  The court will allow 9.0 hours of attorney time as reasonable (resulting in a reduction of $3,025.00 in fees).

LOSRF claims 17.2 hours by Attorney Park for reviewing objections to, and drafting an omnibus reply to objections to, the first amended disclosure statement (0.3 hour on 10/4/11, 0.2 hour on 10/4/11, 0.4 hour on 10/4/11, 0.4 hour on 10/5/11, 1.8 hour

1  on 10/5/11, 1.0 hour on 10/6/11, 0.4 hour on 10/6/11, 5.8 hours on 10/6/11, 0.4 hour on

2  10/6/11, 0.5 hour on 10/7/11, 3.0 hours on 10/7/11, 1.0 hour on 10/11/11, 1.0 hour on

3  10/11/11).  The court finds that the claimed time is excessive because based on the

4  court's review of the reply and the objections, the tasks to review the objections and draft

5  the reply did not warrant the time claimed.  The court will allow 8.0 hours of attorney time

6  as reasonable (resulting in a reduction of $2,300.00 in fees).

7         LOSRF claims 5.0 hours by Attorney Park for legal research on deemed

8  acceptance of plan for nonvoting (3.8 hours on 12/9/11, 0.2 hour on 12/12/11 and 1.2

9  hours on 12/13/11).  The court finds that the claimed time is excessive because this issue

10  only required minimal research; an experienced bankruptcy attorney like Attorney Fox

11  would have known of the relevant law on this point, specifically the two conflicting cases

12  of *In re M. Long Arabians,* 103 B.R. 211 (9th Cir. BAP 1989) and *In re Ruti-Sweetwater,*

13  836 F.2d 1263 (10th Cir. 1988).  Thus, the court will allow 0.5 hour of research time as

14  reasonable to check on the current state of the case law (resulting in a reduction of

15  $1,125.00 in fees).  (Moreover, the court does not understand why applicant represented

16  in a status report on 12/6/11 without citing any legal authority or noting the conflict in the

17  case law before this research was done that a nonvoting impaired creditor is deemed to

18  accept the plan, which indicates lack of adequate supervision before the status report

19  was filed.)

20         LOSRF claims 4.3 hours by Attorney Park for drafting the ballot summary (2.0

21  hours on 12/12/11, 0.8 hour on 12/13/11 and 1.5 hours on 12/14/11) and 0.2 hour by

22  Attorney Fox (0.2 hour on 12/14/11).  The court finds that the claimed time is excessive

23  because a higher cost attorney is conducting this nonlegal word processing tasks rather

24  than a lower cost paralegal or legal assistant. The court will allow 0.2 hour by Attorney

25  Fox and 2.0 hours of administrative time at a legal assistant rate of $125 per hour as

26  reasonable (resulting in a reduction of $825.00 in fees).

27         LOSRF claims 1.0 hour by Attorney Park for service and filing of amended notice

28  of status conference (1.0 hours on 12/15/11).  The court finds that the claimed time is

1    excessive because a higher cost attorney is conducting this nonlegal administrative task

2    rather than a lower cost experienced paralegal or legal assistant.  The court will allow 0.5

3    hour of administrative time at a legal assistant rate of $125 per hour as reasonable

4    (resulting in a reduction of $187.50 in fees).

5        LOSRF claims 0.9 hour by Attorney Park for service of notice of hearing on motion

6    for late accepted ballots (0.9 hour on 1/15/12).  The court finds that the claimed time is

7    excessive because a higher cost attorney is conducting this nonlegal administrative task

8    rather than a lower cost experienced paralegal or legal assistant.  The court will allow 0.5

9    hour of administrative time at a legal assistant rate of $125 per hour as reasonable

10    (resulting in a reduction of $162.50 in fees).

11        LOSRF claims 27.0 hours by Attorney Park for reviewing objections to plan

12    confirmation and drafting a third amended disclosure statement and orders approving it

13    (0.7 hour on 1/31/12, 0.3 hour on 1/31/12, 0.8 hour on 2/2/12, 0.5 hour on 2/7/12, 0.5

14    hour on 2/9/12, 0.7 hour on 2/8/12, 0.2 hour on 2/9/12, 5.5 hours on 2/9/12, 0.9 hour on

15    2/10/12 (2.9 hours devoted), 0.9 hour on 2/10/12, 0.8 hour on 2/10/12, 0.3 hour on

16    2/13/12, 0.3 hour on 2/13/12, 0.2 hour on 2/20/12, 0.1 hour on 2/22/12, 0.8 hour on

17    3/7/12, 0.1 hour on 3/7/12, 0.2 hour on 3/7/12, 3.0 hours on 3/8/12, 0.9 hour on 3/13/12,

18    3.9 hours on 3/14/12, 0.1 hour on 3/21/12, 0.5 hour on 3/23/12, 0.3 hour on 3/28/12, 1.8

19    hour 3/28/12, 0.8 hour on 3/28/12, 0.4 hour on 3/29/12, 2.0 hours on 3/29/12).  The court

20    finds that the claimed time is excessive because based on the court's review of the

21    objections and third amended disclosure statement and related orders, the tasks to

22    review the objections and prepare the third amended disclosure statement and related

23    orders did not warrant the time claimed.  The court will allow 12.0 hours of attorney time

24    as reasonable (resulting in a reduction of $3,750.00 in fees).

25        LOSRF claims 7.7 hours by Attorney Park for preparing a motion to sell raw land

26    (0.1 hour on 2/3/12, 0.1 hour on 2/3/12, 2.8 hours on 2/3/12, 1.6 hours on 2/6/12, 0.5

27    hour on 2/7/12, 0.2 hour on 2/7/12, 2.0 hours on 2/7/12, and 0.4 hour on 2/8/12).  The

28    court finds that the claimed time is excessive because this was a simple, straightforward

1    motion with no citation of legal authority that did not warrant the time claimed.  The court

2    will allow 3.0 hours of attorney time as reasonable (resulting in a reduction of $1,175.00

3    in fees).

4         LOSRF claims 17.5 hours by Attorney Park for reviewing objections to plan

5    confirmation, and drafting a plan confirmation memorandum  (0.5 hour on 4/18/12, 0.3

6    hour on 4/19/12, 2.5 hours on 4/30/12, 0.4 hour on 5/1/12, 0.7 hour on 5/1/12, 0.3 hour

7    on 5/2/12, 0.4 hour on 5/2/12, 0.2 hour on 5/2/12, 0.2 hour on 5/3/12, 1.0 hour on 5/3/12,

8    0.8 hour on 5/4/12, 0.5 hour on 5/4/12, 0.5 hours on 5/4/12, 3.9 hours on 5/4/12, 0.5 hour

9    on 5/4/12, 0.8 hour on 5/4/12, 0.5 hour on 5/4/12, 0.8 hour on 5/2/14, 0.5 hour on 5/5/12,

10   0.7 hour on 5/7/12, 0.5 hour on 5/7/12, 0.5 hour on 5/7/12, 0.2 hour on 5/7/12, 0.1 hour

11   on 5/11/12, 0.1 hour on 5/11/12, 0.1 hour on 5/11/12, ).  The court finds that the claimed

12   time is excessive because based on the court's review of the objections and the plan

13   confirmation memorandum, the tasks to review the plan objections and to prepare the

14   plan confirmation memorandum did not warrant the time claimed.  The court will allow 8.0

15   hours of attorney time as reasonable (resulting in a reduction of $2,375.00 in fees).

16        The court is not "writing down" the time billed because that is the exercise of

17   counsel's "billing judgment."  Rather pursuant to the court's independent statutory duty to

18   review a professional's fee application for "reasonableness" pursuant to Section 330 of

19   the Bankruptcy Code, the court determines whether the services are reasonable or not

20   reasonable if they are excessive and allows the fees accordingly.  The court finds it

21   appropriate to make adjustments in the award of fees to LOSRF by reducing the number

22   of hours from the total billed by him as well as making other adjustments.  Based on the

23   above adjustments, the court disallows a total of $37,927.50 in fees billed by LOSRF as

24   excessive.[3]

25   _____

26   [3] Alternatively, the court might have reduced the billing rate of $250 per hour charged by LOSRF for
     Attorney Park's services as a novice attorney with only a few months experience when the services were
     first rendered by him on this case, but the court concludes that adjustments primarily in the number of
27   hours billed by Attorney Park appropriately adjusts the fees for reasonableness in this case.

28

1    Fifth, the court must consider whether the professional exercised reasonable

2  billing judgment.  In considering billing judgment of the professional, the court looks at the

3  following factors: (a) whether the burden of the probable cost of legal services is

4  disproportionately large in relation to the size of the estate and maximum probable

5  recovery; (b) to what extent will the estate suffer if the services are not rendered; and

6  (c) to what extent may the estate benefit if the services are rendered and what is the

7  likelihood of the disputed issues being resolved successfully.  *In re Garcia,* 335 B.R. at

8  724.  Considering applicable factors regarding professional billing judgment, except for

9  the fees disallowed above as excessive, the court finds as to LOSRF that the burden of

10  the probable cost of professional services is not disproportionately large in relation to the

11  size of the estate and maximum probable recovery as the amount of the fees is not

12  unreasonably large compared to the size of the estate, that the estate would have

13  suffered without LOSRF rendering competent business bankruptcy legal services to

14  guide the debtor through the bankruptcy reorganization process and that the estate

15  benefited by having competent business bankruptcy legal counsel to represent debtor in

16  this business reorganization case.  In this regard, debtor apparently objects to LOSRF's

17  fees in general because he has "serious concern that professional fees are so high that

18  they could jeopardize the approved plan."  *Declaration of Mark Lebens in Dispute of Fees*

19  *and Costs for Certified Public Accountant for Debtor-in-Possession for Services Provided*

20  at 2.  In considering the LOSRF's billing judgment, LOSRF's fees are reasonable after

21  the reductions by the court, and the court finds that debtor has not shown that the

22  requests for professional fees, including LOSRF's fees as reduced by the court,

23  jeopardize debtor's plan of reorganization.

24    In LOSRF's second and final application for award of fees and costs, LOSRF

25  requested an award of $51,257.98 for the period from December 24, 2011 to May 16,

26  2012.  At trial, LOSRF agreed to reduce its fees by $1,270.00 in accordance with its

27  policy not to bill time for professionals billing for the same time (i.e., appearing at the

28  same hearing or attending the same meeting) and $1,491.50 for overbilled photocopying

1   and scan charges for a net amount requested of $48,496.48.  LOSRF also requests that

2   the court award on a final basis fees and costs of $158,327.24 previously awarded on an

3   interim basis for the period from March 3, 2011 to December 23, 2011, of which the

4   amount of $60,594.74 is still owing.  In sum, LOSRF requests a total award of fees and

5   costs for the entire period from March 3, 2011 to May 16, 2012 on a final basis in the

6   amount of $206,823.72, of which $109,091.72 is still owing and payment is requested by

7   LOSRF.   As discussed above, the court disallows a total of $37,927.50 in fees as

8   excessive.

9        For the foregoing reasons, the court determines that the LOSRF should be

10  awarded professional fees and costs of $168,896.22 as reasonable compensation

11  pursuant to Section 330 for services rendered as accountants for the debtor-in-

12  possession for the period from April 28, 2011 to May 16, 2012 pursuant to its second and

13  final fee application for award of fees and costs on a final basis.  Based on LOSRF's

14  computations as adjusted by the court's disallowance of excessive fees, the amount due

15  and owing LOSRF is $71,164.22.

16       **2.  Fee Application of Howard Fox, C.P.A.**

17       First, the court examines whether the services of the professional, CPA, were

18  authorized.  The answer is yes as the court approved CPA's application for employment

19  as accountant for the debtor-in-possession.

20       Second, the court next inquires whether the services necessary or beneficial to the

21  administration of the estate at the time they were rendered.  As discussed herein, the

22  court finds that the services of CPA were necessary and/or beneficial to the

23  administration of the estate at the time they were rendered.  The services of CPA were in

24  support of the plan of reorganization of debtor-in-possession, and the accountant's work

25  was to prepare accurate and complete financial projections of debtor's personal finances

26  and his business of investment and management of real properties (including personal

27  cash flow projections, rental business projections and property-by-property projections),

28  which were needed in order for debtor to demonstrate feasibility of the plan of

1   reorganization.  Multiple versions of these projections were required because changes

2   were being made based on the assumptions and interest rate adjustments from

3   negotiated settlements with creditors as well as adjustments for expenses and reserves

4   requested by debtor as the case progressed.

5        Third, the court examines whether the services adequately documented.  The

6   court finds that CPA's services are adequately documented as shown by the detailed

7   billing statements attached to its fee applications, which satisfactorily explain the services

8   rendered.

9        Fourth, the court considers whether the fees required reasonable, taking into

10  consideration the factors set forth in section 330(a)(3).  As discussed above, the court

11  considers the specific factors of Section 330(a)(3)(A)-(E): (A) the time spent on such

12  services; (B) the rates charged for such services; (C) whether the services were

13  necessary to the administration of, or beneficial at the time at which the service was

14  rendered toward the completion of, a case under this title; (D) whether the services were

15  performed within a reasonable amount of time commensurate with the complexity,

16  importance, and nature of the problem, issue, or task addressed; and (E) whether the

17  compensation is reasonable based on the customary compensation charged by

18  comparably skilled practitioners in cases other than cases under [title 11].  *In re Garcia,*

19  335 B.R. at 724.

20       The court now computes the lodestar for CPA.  CPA only charged professional

21  fees for the services of the accountant, Howard Fox, C.P.A., whose hourly rate is

22  $250.00.  The hourly rate of the accountant appears to be reasonable in light of the work

23  involved.  Next, the court must address whether the number of hours expended is

24  reasonable.  After a careful review of the billing records submitted by CPA, the court finds

25  that the number of hours billed in this case be generally reasonable.  The court notes that

26  debtor had no objection to the specific billing entries of CPA on its fee application.

27  Debtor objected to CPA's fee application as unreasonable on grounds that CPA's fees

28  were subject to the "soft" cap debtor contended applied to the fees of all of the

professionals handling his bankruptcy case.  As stated previously, the court finds that the

professionals did not agree to any such cap on their fees and that there was no fixed

contractual limit on the professional fees of LOSRF and CPA.

Debtor also objects that he was not served with a copy of CPA's first fee

application.  While the proof of service for the first fee application does not indicate that

debtor was served with it, apparently arguing that he was denied procedural due process,

there is no due process violation because (1) debtor had an opportunity to review and

comment on CPA's first fee application, which he had as indicated by his signed

declaration in support of the first fee application; (2) the fees awarded CPA under the first

fee application was only awarded on an interim basis, subject to the court's final review;

and (3) debtor has had a meaningful opportunity to be heard on all fees of CPA, including

those on the first fee application, as indicated by debtor's written and oral opposition to all

fees of CPA in the proceedings on CPA's second fee application, including the trial,

during which debtor had the opportunity to present evidence, and argue, against the

award of any fees to CPA, and to be fully heard by the court.

Fifth, the court considers whether CPA exercised reasonable billing judgment.

Considering applicable factors regarding professional billing judgment, the court finds as

to CPA that the burden of the probable cost of professional services is not

disproportionately large in relation to the size of the estate and maximum probable

recovery as the amount of the fees is modest compared to the size of the estate, that the

estate would have suffered without CPA rendering accurate and professional accounting

services to support the debtor and his plan of reorganization and that the estate benefited

by having accurate accounting services in the financial data to support debtor and the

plan of reorganization.  In this regard, debtor apparently objects to CPA's fees in general

because he has "serious concern that professional fees are so high that they could

jeopardize the approved plan." *Declaration of Mark Lebens in Dispute of Fees and Costs*

*for Certified Public Accountant for Debtor-in-Possession for Services Provided* at 2.  In

considering the CPA's billing judgment, CPA's fees are relatively modest, and the court

1 finds that debtor has not shown that the requests for professional fees, particularly those

2 of CPA, jeopardize debtor's plan of reorganization.

3     For the foregoing reasons, the court determines that the CPA should be awarded

4 professional fees of $5,500 as reasonable compensation pursuant to Section 330 for

5 services rendered as accountants for the debtor-in-possession for the period from

6 January 1, 2012 to May 16, 2012 pursuant to his second and final fee application for

7 award of fees and costs.

8     For the foregoing reasons, the court determines that the CPA should be awarded

9 professional fees of $26,562.50 as reasonable compensation pursuant to Section 330 for

10 services rendered as accountants for the debtor-in-possession for the period from April

11 28, 2011 to May 16, 2012 pursuant to his second and final fee application for award of

12 fees and costs on a final basis.

13     This separate statement of decision shall constitute the court's further findings of

14 fact and conclusions of law in addition to those separate findings of facts and conclusions

15 of law adopted by the court.  To the extent that there is any inconsistency between the

16 separate statement of decision and the findings of fact and conclusions of law, the

17 separate statement of decision governs.

18     Applicants are ordered within 14 days of entry of this decision to submit proposed

19 final orders reflecting the awards of fees and expenses in accordance with the court's

20 ///

21 ///

22 ///

23

24

25

26

27

28

1    rulings in this separate statement of decision and the findings of fact and conclusions of

2    law adopted by the court.

3            IT IS SO ORDERED.

4                                                                ###

Date: March 27, 2013

                                        _____

                                        Robert Kwan
                                        United States Bankruptcy Judge

1

## NOTICE OF ENTERED ORDER AND SERVICE LIST

2

3    Notice is given by the court that a judgment or order entitled (*specify*) **SEPARATE STATEMENT OF DECISION ON DEBTOR'S OBJECTIONS TO FINAL FEE APPLICATIONS OF PROFESSIONALS OF THE ESTATE** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

4

5    **I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **March 27, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

6

7

8

9       - Moises S Bardavid    mbardavid@hotmail.com
        - Deborah Conley    bkmail@prommis.com
10      - Steven R Fox    emails@foxlaw.com
        - Christopher Hoo    hoo.christopher@gmail.com
11      - Mehrdaud Jafarnia    bknotice@mccarthyholthus.com, mjafarnia@mccarthyholthus.com
        - Gerald S Kim    cdcaecf@bdfgroup.com
12      - John H Kim    jkim@cookseylaw.com
        - Paul H Kim    Pkim@counsel.lacounty.gov
13      - William Malcolm    bill@mclaw.org
        - Alvin Mar    alvin.mar@usdoj.gov
14      - Kelly M Raftery    bknotice@mccarthyholthus.com
        - J Alexandra Rhim    arhim@dykema.com, CPerez@dykema.com
15      - Cassandra J Richey    cmartin@pprlaw.net
        - Timothy J Silverman    tim@sgsslaw.com
16      - Lisa B Singer    bkmail@rosicki.com
        - Nathan F Smith    nathan@mclaw.org
17      - Scott O Smith    ssmith@buchalter.com
        - United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
18      - Darlene C Vigil    cdcaecf@bdfgroup.com
        - Edward T Weber    bknotice@rcolegal.com

19

20   **II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

21

22   Mark Lebens
     568 E. Lago Lindo Road
23   Palmdale, CA 93550

24   **III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

25

26

27

28